IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| ANDREW DEAN LAYMAN, as Natural Guardian for and on behalf of ISABELLA LAYMAN, a minor over the age of Fourteen, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 9:15-cv-01463-DCN |
| vs. | ) ) ) | |
| JUNIOR PLAYERS GOLF ACADEMY, INC., | ) ) ) | **ORDER** |
| Defendant. | ) ) | |

This matter is before the court on plaintiff Andrew Dean Layman's ("Layman") motion to quash the deposition notice of Jeffrey Charles Yalden ("Yalden") and defendant Junior Players Golf Academy's ("the Academy") motion for protective order. For the reasons set forth below, the court denies in part and grants in part Layman's motion and grants the Academy's motion.

## I. BACKGROUND

Layman is the father and natural guardian of Isabella Layman ("Bella"), a minor under the age of 18. Am. Compl. ¶ 2. The Academy is a corporation organized and existing under the laws of South Carolina with its principal place of business in Beaufort, South Carolina. Id. ¶ 3. Bella is an amateur golfer who began attending the Academy in August 2014. Id. ¶ 11. In the original complaint, Layman alleged that on or about September 2014, former defendant Isadora Nilsson ("Nilsson") began harassing and bullying Bella by various means, including making "accusations of cheating, threats of

1

physical harm, and defamatory statements regarding [Bella's] want of chastity." Compl. ¶ 14. Layman alleged that Bella reported the bullying to employees and agents of the Academy, but they failed to take action. Id. ¶ 15. Layman further alleged that the bullying and harassment intensified, but that employees at the Academy failed to do anything about it. Id. According to Layman, Bella sought, and continues to seek, psychological treatment and was forced to withdraw from the Academy on March 25, 2015. Id. ¶¶ 21–22. On April 1, 2015, Layman filed the present action, alleging the following claims: negligence against the Academy, assault against Nilsson, and intentional infliction of emotional distress, defamation, and civil conspiracy against both the Academy and Nilsson.

On October 8, 2015, the parties filed a stipulation of dismissal, dismissing Nilsson as a defendant with prejudice. The remaining parties filed a consent amended scheduling order under which motions to amend the pleadings were due by November 5, 2015. Layman filed an amended complaint on December 16, 2015.[1] On March 3, 2016, Layman filed the present motion to quash the deposition notice of its former testifying expert Jeffrey Charles Yalden ("Yalden"). The Academy filed a response in opposition to the motion on March 18, 2016. On March 7, 2016, the Academy filed a motion for a protective order and to quash the documents subpoena Layman served its accountant.

---

[1] The amended complaint omits the defamation claim and civil conspiracy claim against the Academy, but adds a breach of contract claim. While the first complaint alleged that Nilsson harassed and bullied Bella and that the Academy was negligent in failing to supervise the students, the amended complaint alleges that numerous unnamed students harassed and bullied Bella. Am. Compl. ¶ 14. Additionally, the allegation that Nilsson accused Bella of cheating and all allegations relating to cheating were omitted, except for a reference, in a footnote, to a nickname other students called her after she was disqualified from a tournament. Id. ¶ 18, n.1. Lastly, Layman deleted all of the claims against Nilsson because the parties settled.

Layman filed a response in opposition to the motion to quash on March 24, 2016. The motions have been fully briefed and are ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (note that the 2015 Amendments omit the phrase "reasonably calculated to lead to the discovery of admissible evidence"). Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding or limiting the scope of discovery. Fed. R. Civ. P. 26(c)(1). Such orders may prescribe, among other measures, "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Id. (c)(1)(A), (c)(1)(D). A motion for a protective order is subject to a conferral certification requirement comparable to that for motions to compel and the same provision on the award of expenses applicable to motions to compel. See Fed. R. Civ. P. 26(c)(1), (3). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568

n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

Rule 30 gives parties broad leave to depose "any person" who may have relevant information in a case. Fed. R. Civ. P. 30. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. Fed. R. Civ. P. 26(b)(4)(A). However, a party ordinarily may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed in anticipation of litigation or to prepare for trial or who is not expected to be called as a witness at trial. Fed. R. Civ. P. 26(b)(4)(D). A party may do so only as provided in Rule 35(b) for a physical or mental examiner's report or "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Id. When a party subpoenas a nonparty's attendance at a deposition, the nonparty may move to quash the subpoena under Rule 45, which requires that a district court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

### III. DISCUSSION

#### A. Layman's Motion to Quash Yalden's Deposition Notice

Layman seeks an order from the court quashing the Academy's deposition notice of Yalden and entering a protective order preventing the Academy from further discovery as to Yalden pursuant to Federal Rule of Civil Procedure 26(b)(4)(D).

On November 4, 2015, Yalden, a bullying expert, interviewed Bella. According to Yalden's notes, Bella made the following statements:

> The Academy's director left Isadora Nillson, a former defendant in this case, "in charge" of Bella;
>
> Bella's house parent quit and put Nillson in charge for two months;
>
> The Academy's Director "would hang up and not talk to [Bella's] parents;"
>
> The bullying occurred in February and March 2015.

Def.'s Resp. 2; see also ECF No. 78, Ex. 1 at 81–82; ECF No. 78, Ex. 4. Further, Nillson is the only alleged bully named in Yalden's notes and is mentioned seven times. Id.

On December 1, 2015, Layman filed and served his initial expert disclosures identifying Yalden as an expert to testify at trial and serving his report. See Pl.'s Mot. Ex. A. On January 15, 2016, Yalden produced his notes and the documents used in reviewing the case, including the notes from his interview with Bella. On January 27, 2016, the Academy noticed Yalden's deposition for March 7, 2016. Pl.'s Mot. Ex. B. On March 3, 2016, less than two business days prior to Yalden's deposition, Layman amended his expert disclosures and removed Yalden as a testifying expert. Layman's attorney emailed the Academy's attorney to notify him that Layman decided to re-designate Yalden from a testifying expert to a non-testifying expert and that he would not

5

proceed with his deposition. Pl.'s Mot. Ex. C. The Academy refused to withdraw its notice of Yalden's deposition. Thereafter, Layman filed the present motion to quash on March 3, 2016.

Layman asserts that since he identified his testifying experts in this case, the voluminous discovery has changed his desire to offer Yalden as a testifying witness. Pl.'s Mot. 4. Layman argues that because he re-designated Yalden as a non-testifying expert witness, Yalden is no longer subject to deposition testimony under Rule 26(b)(4)(A). Pl.'s Mot. 3. Layman contends that the Academy has failed to establish exceptional circumstances to warrant Yalden's deposition under Rule 26(b)(4)(D). In support of his motion, Layman cites case law from other jurisdictions in which courts have held that a party may restore "consulting expert privilege" by re-designating a previously identified expert from testifying to non-testifying. Pl.'s Mot. 2 (citing R.C. Olmstead, Inc. v. CU Interface, LLC, 657 F. Supp. 2d 899, 903 (N.D. Ohio 2009), aff'd, 606 F.3d 262 (6th Cir. 2010) ("Accordingly, this Court adopts the majority rule and holds that, where a party identifies an expert as testifying under Rule 26(b)(4)(A), but subsequently redesignates the expert as non-testifying, the opposing party may only depose that expert upon a showing of 'exceptional circumstances' under Rule 26(b)(4)(B) [sic]."). In response, the Academy asserts that Bella's statements to Yalden are inconsistent with her prior sworn deposition testimony and with Layman's current theory of the case that Bella was harassed and bullied by numerous students. The Academy argues that it is necessary to depose Yalden regarding his interview with Bella and Janet Kelly. Therefore, the Academy asserts that exceptional circumstances exist to warrant

Yalden's deposition despite Layman's "eleventh-hour un-designation" of Yalden as a testifying witness.  Def.'s Resp. 3–5.

The "minority approach" treats witnesses formerly identified as testifying experts differently than those never designated as testifying experts, holding that witnesses that were designated as testifying experts under Rule 26(b)(4)(A), but later re-designated as non-testifying, are governed by a balancing test similar to Federal Rule of Evidence 403. House v. Combined Ins. Co. of Am., 168 F.R.D. 236 (N.D. Iowa 1996) (holding that an expert conducting a Rule 35 medical examination of plaintiff, even though subsequently designated non-testifying by defendant, could be deposed by plaintiff's counsel). However, courts have distinguished House because it was decided in the context of a Rule 35 expert examination relating to medical examinations of a party and therefore constituted a substantial reason for allowing the medical examiner to be deposed even after being re-designated as non-testifying.  See R.C. Olmstead, 657 F. Supp. 2d at 903–04 (noting that many courts view House as only applying to Rule 35 experts); Green v. Nygaard, 143 P.3d 393, 397 n.4 (Ariz. App. Div. 2006) (citing cases and noting distinctions).

Courts following the "majority rule," on the other hand, hold that a party may re-designate an expert as non-testifying and thereby insulate the expert from deposition by other parties absent a showing of exceptional circumstances under Rule 26(b)(4)(D). See, e.g., R.C. Olmstead, 657 F. Supp. 2d at 903 (N.D. Ohio 2009); In re Shell Oil Refinery, 132 F.R.D. 437, 440 (E.D. La. 1990); FMC Corp. v. Vendo Co., 196 F. Supp. 2d 1023, 1046 (E.D. Cal. 2002); Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc., 2002 WL 1906628, at *3 (D. Del. Aug. 14, 2002); Employer's Reins. Corp. v. Clarendon

Nat'l Ins. Co., 213 F.R.D. 422, 426 n.11 (D. Kan. 2003); Fed. Ins. Co. v. St. Paul Fire and Marine Ins. Co., 2008 WL 761417, at *3 (N.D. Cal. Mar. 19, 2008); Green v. Nygaard, 143 P.3d 393, 397 (Ariz. 2006).

The Fourth Circuit has not ruled on the issue of whether a party may avoid an expert deposition pursuant to Rule 26(b)(4)(A) and invoke the protections of Rule 26(b)(4)(D) by re-designating the expert as non-testifying; nor has, to the court's knowledge, any district court within this circuit. However, the court finds the majority approach as set forth above consistent with the plain language of Rule 26(b)(4)(D) requiring a showing of exceptional circumstances to depose a non-testifying expert witness. Therefore, the court must determine whether exceptional circumstances are present to warrant Yalden's deposition.

Rule 26(b)(4)(D) provides that exceptional circumstances are those "under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." "Examples of [exceptional circumstances] would include evidence deteriorating after a party's non-testifying expert observes it but before the opposing party has an opportunity to observe it, or if there are no other available experts in the same field or subject area." R.C. Olmstead, 657 F. Supp. 2d at 904. Courts have also found exceptional circumstances "when a non-testifying expert's report is used by a testifying expert as the basis for an expert opinion, or when there is evidence of substantial collaborative work between a testifying expert and a non-testifying expert." Long-Term Capital Holdings, LP v. United States, 2003 WL 21269586, at *2 (D. Conn. May 6, 2003). Exceptional circumstances are also present where "it is possible to replicate expert discovery on a contested issue, but the costs would be judicially prohibitive," for

8

example, when the replication would cause the party to expend enormous time and resources duplicating the expert's efforts. Bank of Brussels Lambert v. Chase Manhattan Bank, 175 F.R.D. 34, 45 (S.D.N.Y. 1997). Judge Childs has found exceptional circumstances under Rule 26(b)(4)(D) and required the defendant to produce a non-testifying, consulting expert's facts and opinions or the expert's post-accident reconstruction investigation information when the plaintiff's injuries prevented him from being able to conduct a post-accident, on-scene investigation himself. Nix v. Holbrook, No. 5:13-cv-02173, 2015 WL 631155, at *6 (D.S.C. Feb. 13, 2015).

The Academy asserts that it is unable to discover information regarding Bella's alternative, inconsistent versions of the facts without deposing Yalden. Def.'s Resp. 7. Bella was first deposed months prior to Yalden's disclosure of his report and notes. Further, Bella's second deposition—although taken after the Academy received Yalden's notes—was limited by court order to the new allegations in the amended complaint. Yalden's deposition was scheduled for twenty-one days after Bella's second deposition, and the Academy intended to question Yalden on his notes and reports at that time. Id. The Academy asserts that Yalden's deposition is relevant beyond his interview with Bella because he interviewed Janet Kelly, a former Director of Student Care; however, Janet Kelly did not mention her discussing the case with Yalden during her January 25, 2016 deposition. Id.

The court finds that exceptional circumstances are present to warrant the Academy's limited deposition of Yalden. Specifically, although the court does not find it necessary for the Academy to depose Yalden regarding his opinions, the Academy may depose Yalden regarding the facts on which he based his opinions—including Bella and

Janet Kelly's interviews. The Academy does not have an alternate method by which to obtain the information regarding Yalden's interview with Bella and her inconsistent statements. Further, the policy considerations of the "consulting expert privilege" are not directly implicated in this case. Although Rule 26(b)(4)(D) seeks to protect the interest in free consultation between counsel and non-testifying experts, Yalden was retained as a testifying expert expected to give "detailed testimony" regarding his expertise and "the effects of bullying and lack of supervision" on Bella. Pl.'s Expert Disclosure, ECF No. 78, Ex. A. Yalden interviewed Bella in his role as a testifying expert and not a consultation expert, and his notes and reports were already disclosed to the Academy. Therefore, the protections did not exist at the time of his interview with Bella. Lastly, there is no indication from Layman's motion that he will suffer prejudice if the court were to deny his motion to quash and allow the Academy to proceed with Yalden's deposition.

Therefore, the court holds that the Academy has established exceptional circumstances to warrant Yalden's deposition as a non-testifying expert under Rule 26(b)(4)(D) regarding the facts on which he based his opinions, including Bella's and Janet Kelly's interviews.

### B.     The Academy's Motion for Protective Order and to Quash

Layman served a subpoena on the Academy's accountant on March 2, 2016, requesting its accountant's <u>entire file</u> related to the Academy by March 16, 2016. By consent scheduling order, the close of discovery was March 25, 2016 and all "discovery requests" were required to be "served in time for the responses thereto to be served by this deadline." ECF No. 74. The Academy now requests that this court enter an order

forbidding this discovery and quashing the subpoena because "the subpoena is untimely, over broad and will require disclosure of privileged and other protected matter." Def.'s Mot. 1.

The Academy first asserts that Layman's subpoena is untimely, arguing that Layman is attempting to circumvent the deadline in the scheduling order by requesting the documents pursuant to Rule 45 rather than the proper procedure for discovery between parties under Rule 34. Def.'s Mot. 1–2. The Academy also argues that the subpoena is unduly burdensome because it seeks the accountant's entire file—including financial records, audits, bank records, communications between the accountant and anyone regarding this case, and "any and all other information in [the accountant's] possession not specifically requested above"—and is not limited proportionally to the needs of this case. Def.'s Mot. 3.[2]

In response, Layman argues that the Academy lacks standing to challenge the scope of the subpoena. Pl.'s Resp. 3. "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." HDSherer LLC v. Nat. Molecular Testing Corp., 292 F.R.D. 305, 307 (D.S.C. 2013) (quoting United States v. Idema, 118 Fed.Appx. 740, 744 (4th Cir. 2005)). However, a party may challenge a subpoena under Rule 26 standards "regardless of whether [it has] standing to bring a motion to quash

---

[2] Lastly, the Academy argues that the subpoena seeks disclosure of privileged or other protected documents. However, the Academy failed to present persuasive arguments regarding the alleged privileged nature of the documents. There is no indication from the briefing of the percentage of documents that may be privileged. Further, any privileged documents could be adequately addressed by a privilege log and therefore should not provide a basis to quash the document subpoena entirely.

under Rule 45." Id. (quoting Singletary v. Sterling Transp. Co., 289 F.R.D. 237, 239 (E.D. Va. 2012)). Under Rule 26(c), "a party may move for a protective order to protect itself from 'annoyance, embarrassment, oppression, or undue burden or expense,' regardless of whether the moving party is seeking to prevent disclosure of information by a nonparty, as long as the moving party can tie the protected information to an interest listed in the rule . . . ." Id. (quoting Firetrace USA, LLC v. Jesclard, 2008 WL 5146691, at *2 (D. Ariz. Dec. 8, 2008). The Academy's motion is a motion for protective order pursuant to Rule 26 and a motion to quash pursuant to Rule 45. It is likely that, given the nature and breadth of the documents requested from the Academy's accountant, the Academy will be subjected to undue burden; therefore, the interest asserted is sufficient to satisfy the requirement of Rule 26(c). Because the Academy filed a motion for protective order pursuant to Rule 26 arguing that the subpoena is unduly burdensome and oppressive, it has standing to challenge the subpoena of its accountant.

Rule 34 provides the procedure by which a party may obtain documents from another party. Rule 45 provides the procedure by which a person may be compelled to produce documents and tangible things by subpoena. Rule 34 gives the responding party 30 days after being served to respond in writing. Rule 45 does not impose time limits by which parties must respond, allowing the party serving the subpoena to fashion a specific time limit by which to respond as long as it is "reasonable." Fed. R. Civ. P. 45(d)(3)(A)(i). "The leading treatises agree that although Rule 45 may apply to both parties and nonparties, resort to Rule 45 should not be allowed when it circumvents the requirements and protections of Rule 34 for the production of documents belonging to a party." Stokes v. Xerox Corp., 2006 WL 6686584, at *3 (E.D. Mich. Oct. 5, 2006). "If

documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a nonparty witness." 8A Charles Alan Wright, et al., Federal Practice and Procedure § 2204 at 365 (2nd ed. 1994). "Although Rule 45 is not limited by its terms to nonparties, it should not be used to obtain pretrial production of documents or things, or inspection of premises, from a party in circumvention of discovery rules or orders. Discovery from a party, as distinct from a nonparty, is governed by Rule 34, not Rule 45." 7 Moore's Federal Practice § 34.02[5][e] (3d ed.) (citing Hasbro, Inc. v. Serafino, 168 F.R.D. 99 (D. Mass. 1996)).

In support of its motion, the Academy cites Nguyen v. Louisiana State Bd. of Cosmetology, 2016 WL 320152, at *1 (M.D. La. Jan. 26, 2016), and Stokes v. Xerox Corp., 2006 WL 6686584, at *3 (E.D. Mich. Oct. 5, 2006). In Nguyen, defendant's counsel received subpoenas by email on January 12, 2016 seeking the defendant's and a non-party's deposition and production of certain documents. Id. The court held that because the discovery deadline was January 29, 2016, and given the type of requested documents, plaintiffs were using Rule 45 to make an end-run around Rule 34. Id. The court found that the subpoenas were untimely and subjected defendants to undue burden, quashing the subpoenas. Id. In Stokes, plaintiffs sent a subpoena to defendant's employee eight days before the close of discovery. Stokes, 2006 WL 6686584, at *1. The court granted defendant's motion to quash, stating that "[i]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a nonparty witness," pursuant to Rule 45. Id. at *3 (internal quotation marks omitted).

Under the consent second amended scheduling order, ECF No. 74, discovery must be completed no later than March 25, 2016 and "all discovery requests shall be served in time for the responses thereto to be served by this deadline."  Therefore, the scheduling order prevents Layman from obtaining the documents pursuant to Rule 34 because less than thirty days remained for discovery in the scheduling order when Layman served the subpoena.  Even though Layman could have obtained the documents from the Academy pursuant to the procedures outlined in Rule 34, the allotted thirty-day window fell outside of the close of discovery under the consent scheduling order.  Therefore, it appears that the subpoena of the Academy's accountant was an attempt to circumvent Rule 34 via Rule 45.

Further, by its very language, the subpoena is unduly burdensome and not proportional to the needs of the case.  The subpoena requests financial records and audits for years that Bella did not attend the Academy, bank records for "unknown accounts," "financial forecasts," communications between the accountant "and anyone else regarding this case." Def.'s Mot. Ex. A.  Lastly, the subpoena contains a catchall provision for "[a]ny and all information in [the accountant's] possession not specifically requested above." Id.  Layman never sought these documents from the Academy and did not question the Academy's 30(b)(6) witness concerning financial information.  The court finds the burden of the request disproportionate to Layman's apparent need to obtain the documents considering Layman did not seek any financial information from the Academy during the entire course of discovery prior to this subpoena.  Therefore, the court questions the importance of the financial records at this late juncture—less than one month before the close of discovery.

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** Layman's motion to quash Yalden's deposition notice.  The court **ORDERS** Yalden to submit to a limited deposition within thirty days of the date of this order to provide testimony regarding the facts on which he based his opinions, but not the opinions themselves.  Further, the court **GRANTS** the Academy's motion for protective order and to quash the subpoena of its accountant.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 21, 2015**
**Charleston, South Carolina**

15